IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JUN 0 5 2017

DOUGLAS F. YOUNG, Clerk
By
                    Deputy Clerk

| | |
|---|---|
| FIRST STATE INSURANCE COMPANY AND NEW ENGLAND REINSURANCE CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>PULMOSAN SAFETY EQUIPMENT CORPORATION, VICKIE BELL, PHILLIP B. BELL, JR., AND JONATHAN BELL<br><br>Defendants. | Case No. 17-1039 - SOH |

## COMPLAINT

Plaintiffs First State Insurance Company ("First State") and New England Reinsurance Corporation ("NERCO") (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby allege as follows:

## INTRODUCTION

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, relating to the Plaintiffs' obligations under certain insurance policies they issued to Defendant Pulmosan Safety Equipment Corporation ("Pulmosan").

2.      Plaintiffs issued insurance policies to Pulmosan that, collectively, cover the period from October 1, 1979 to October 1, 1984 (the "Policies"). In accordance with the terms of the Policies, Plaintiffs have defended and indemnified Pulmosan against suits alleging exposure to asbestos, silica, and/or mixed dust caused by inadequate industrial safety equipment allegedly manufactured and/or sold by Pulmosan ("Products Liability Claims").

1

3.      Plaintiffs seek declarations establishing that they:  (a) have exhausted the

applicable aggregate limits of liability under the Policies; and (b) have no further defense or

indemnity obligations under the Policies for Products Liability Claims, including with respect to

a certain silica-related lawsuit filed by Defendants Vickie Bell, Jonathan Bell, and Phillip Bell,

Jr. (the "Bell Parties")

## PARTIES

4.      Plaintiff First State is a Connecticut corporation with its principal place of

business in Connecticut.

5.      Plaintiff NERCO is a Connecticut corporation with its principal place of business

in Connecticut.

6.      On information and belief, Defendant Pulmosan is a defunct corporation whose

dissolution has been suspended as to claims arising out of its products first used prior to August

1, 1986, and which continues to exist for the purpose of winding up its affairs.  On information

and belief, Pulmosan does not maintain a regular place of business.   Upon information and

belief, before ceasing operations in 1986, Pulmosan conducted business in the State of Arkansas.

7.      On information and belief, Defendants Vickie Bell, Jonathan Bell, Phillip Bell, Jr.

are residents and citizens of the State of Arkansas.

## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332

because there is complete diversity between Plaintiffs and each of the Defendants and the

amount in controversy exceeds $75,000.

9.      This Court is empowered to issue the declarations sought in the action pursuant to

28 U.S.C. § 2201.

10.     Venue is proper in the Western District of Arkansas pursuant to 28 U.S.C. § 1391 because Defendant Vickie Bell is a resident of the Western District of Arkansas.

## FACTUAL BACKGROUND

### The Products Liability Claims

11.     On information and belief, prior to 1987, Pulmosan engaged in the manufacture and sale of industrial safety equipment.

12.     Numerous individuals who alleged that they used such equipment have filed lawsuits against Pulmosan and other entities, generally alleging that the equipment did not provide adequate protection and that as a result they were injured by exposure to asbestos, silica and/or mixed dust. Numerous suits remain pending, and Plaintiffs expect additional products liability suits against Pulmosan to be filed in the future.

### The Bell Lawsuit

13.     On October 17, 2013, the Bell Parties filed suit in the United States District Court for the Western District of Arkansas against various parties, including Pulmosan, captioned *Bell et al. v. Mine Safety Appliances Co. et al.*, No. 1:13-cv-01075 (the "Bell Lawsuit"). The Amended Complaint alleges products liability and related claims stemming from silica-related injuries.

14.     On August 29, 2016, the District Court entered a default judgment against Pulmosan, and awarded the Bell Parties $929,269 for Vickie Bell's damages; $199,150 for Jonathan Bell's damages; and $199,150 for Phillip Bell, Jr.'s damages, for a total of $1,327,569 (the "Default Judgment").

15.     On September 26, 2016, Pulmosan moved to vacate the Default Judgment. In its motion, Pulmosan asserted that the Court lacked jurisdiction over Pulmosan, contending that the Bell Parties failed to serve Pulmosan.

16.     On December 6, 2016, the District Court denied Pulmosan's motion to vacate the Default Judgment.

17.     On January 5, 2017, Pulmosan filed a Notice of Appeal to the United States Court of Appeals for the Eighth Circuit from the Default Judgment entered by the District Court and the Order denying Pulmosan's motion to vacate that Judgment. That appeal has been fully briefed and remains pending.

18.     On or about January 18, 2017, the Bell Parties served post-judgment discovery on Pulmosan with respect to available assets, if any, to satisfy the Default Judgment. On February 10, 2017, Pulmosan moved to quash the Bell Parties' post-judgment discovery, or in the alternative, stay the Bell Parties' post-judgment discovery pending resolution of the appeal of the Default Judgment. On March 22, 2017, the District Court denied Pulmosan's motion to quash. On April 3, 2017, Pumosan moved the District Court to vacate its March 22, 2017 Order and grant its motion to quash post-judgment discovery, and, in the alternative, renewed its request to stay the Bell Parties' post-judgment discovery pending resolution of the appeal of the Default Judgment. The motion to vacate remains pending.

19.     The Bell Parties have never sought third-party discovery from Plaintiffs or any other insurer of Pulmosan, despite the fact that counsel for the Bell Parties was directly involved in a Bankruptcy Proceeding in which detailed information regarding Pulmosan's insurance coverage was made available to him.

4

20.     On April 8, 2017, counsel for Plaintiffs directly contacted the Bell Parties'
counsel in an effort to provide information informally to him that all Plaintiffs' Policies have
been fully exhausted. Counsel for the Bell Parties never responded.

## Exhaustion of the Policies' Aggregate Limits

21.     Pulmosan sought coverage for Products Liability Claims under policies issued by
its insurers, including First State and NERCO.

22.     First State issued two insurance policies to Pulmosan (collectively, the "First State
Policies"), as follows:

        a.     First State issued umbrella liability Policy No. 944199 for the policy
period October 1, 1979 to October 1, 1980, which provides an aggregate limit of liability
of five million dollars ($5,000,000) applicable to, *inter alia*, products and completed
operations hazards;

        b.     First State issued umbrella liability Policy No. 947168 for the policy
period October 1, 1980 to October 1, 1981, which provides an aggregate limit of liability
of five million dollars ($5,000,000) applicable to, *inter alia*, products and completed
operations hazards.

23.     NERCO issued three policies to Pulmosan (collectively, the "NERCO Policies"),
as follows:

        a.     NERCO issued umbrella liability Policy No. 687337 for the policy period
October 1, 1981 to October 1, 1982, which provides an aggregate limit of liability of
ten million dollars ($10,000,000) applicable to, *inter alia*, products and completed
operations hazards.

b.      NERCO issued umbrella liability Policy No. 687915 for the policy period

October 1, 1982 to November 1, 1983, which provides an aggregate limit of liability of

ten million dollars ($10,000,000) applicable to, *inter alia*, products and completed

operations hazards.  Because Policy No. 687915 was endorsed to extend the policy period

by one month (from October 1, 1983 to November 1, 1983), NERCO has voluntarily

provided an additional ten million dollars ($10,000,000) in aggregate limits of liability to

Pulmosan.

c.      NERCO issued umbrella excess liability Policy No. 792104 for the policy

period November 1, 1983 to October 1, 1984, which provides, in relevant part, an

aggregate limit of liability of eight million dollars ($8,000,000) with respect to products

liability.[1]

24.      Thus, the Plaintiffs' collective obligation under the Policies' aggregate limits of

liability for Products Liability Claims is limited to forty-eight million dollars ($48,000,000) (the

"Aggregate Limit").

25.      The Policies require the Plaintiffs to indemnify Pulmosan for "ULTIMATE NET

LOSS" with respect to covered injuries and damage.  The Policies generally define "ULTIMATE

NET LOSS" as "the sums paid as damages in settlement of a claim or in satisfaction of a

judgment for which the INSURED is legally liable after making [certain permissible] deductions

. . . and also includes investigation, adjustment, appraisal, appeal and defense costs paid or

incurred by the INSURED with respect to damages covered hereunder."  Accordingly, the

---

[1] Policy No. 792104 provides a separate aggregate limit with respect to occupational disease
sustained by the insured's employees.  That aggregate limit is not at issue in this Complaint.

Policies are "wasting" policies, such that both covered indemnity and defense costs erode the Aggregate Limit.

26.     At various times, Plaintiffs have, in accordance with the terms of the Policies, provided Pulmosan with a defense to Products Liability Claims and have participated in the funding of the resolution of certain Products Liability Claims.

27.     First State has made payments of at least ten million dollars ($10,000,000) for Products Liability Claims that are subject to the aggregate limits of the First State Policies. Accordingly, First State has fully satisfied its obligations under the First State Policies for Products Liability Claims, and has no further obligation to pay for the defense and indemnity of Products Liability Claims.

28.     NERCO has paid at least thirty-eight million dollars ($38,000,000) for Products Liability Claims that are subject to the aggregate limits of the NERCO Policies. Accordingly, NERCO has fully satisfied its obligations under the NERCO Policies for Products Liability Claims, and has no further obligation to pay for the defense and indemnity of Products Liability Claims.

<u>**Improper Exhaustion Assertion**</u>

29.     On information and belief, one or more claimants who have filed Products Liability Claims against Pulmosan, including persons represented by counsel for the Bell Parties, have asserted that Plaintiffs may be obligated to pay on behalf of Pulmosan amounts for Products Liability Claims in excess of the Aggregate Limit.

30.     In addition, counsel for the Bell Parties has asserted that "there is plenty of insurance" available to Pulmosan.

## COUNT I
## DECLARATORY JUDGMENT – EXHAUSTION OF AGGREGATE LIMITS
(Against All Defendants)

31.     Plaintiffs repeat and reallege the allegations of Paragraph 1 through 30 as if fully set forth herein.

32.     An actual and justiciable controversy exists between Plaintiffs and Defendants concerning whether the Aggregate Limit of the Policies has been exhausted.

33.     Pursuant to its authority under 28 U.S.C. § 2201, this Court should declare that:

a.     the aggregate limits of liability applicable to Products Liability Claims under the Policies are exhausted; and

b.     Plaintiffs owe no further obligation to defend or indemnify Pulmosan under the Policies for Product Liability Claims.

## COUNT II
## DECLARATORY JUDGMENT – NO COVERAGE FOR BELL LAWSUIT
(Against All Defendants)

34.     Plaintiffs repeat and reallege the allegations of Paragraph 1 through 33 as if fully set forth herein.

35.     An actual and justiciable controversy exists between Plaintiffs and Defendants concerning whether one or more of the Policies provides additional insurance coverage for the Bell Lawsuit.

36.     Pursuant to its authority under 28 U.S.C. § 2201, this Court should declare that Plaintiffs have no further duty to provide defense or indemnity under the Policies for the Bell Lawsuit, including but not limited to, for the Default Judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

        a.      Enter judgment for Plaintiffs on all counts of this Complaint;

        b.      Declare that the aggregate limits of liability applicable to Products Liability Claims under the Policies are exhausted;

        c.      Declare that Plaintiffs owe no further obligation to defend or indemnify Pulmosan under the Policies for Product Liability Claims;

        d.      Declare that Plaintiffs have no further duty to provide defense or indemnity under the Policies for the Bell Lawsuit, including but not limited to, for the Default Judgment; and

        e.      Award such other relief to the Plaintiffs as the Court deems proper and just.

Dated:  May 31, 2017

Respectfully submitted,

Karen J. Hughes (89132)
Smith Williams & Meeks, LLP
500 Broadway Place, Suite 404
Little Rock  AR  72201
501-372-0401 phone
501-372-5277 fax

*Of Counsel*:
James E. Rocap, III, Esq.
Sarah D. Gordon, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Tel:  (202) 429-3000
Fax:  (202) 429-3902
jrocap@steptoe.com
sgordon@steptoe.com

*Counsel for Plaintiffs First State Insurance Company
and New England Reinsurance Corporation*