IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| FIRST STATE INSURANCE COMPANY and NEW ENGLAND REINSURANCE CORPORATION | | PLAINTIFFS |
| v. | Case No. 1:17-cv-1039 | |
| PULMOSAN SAFETY EQUIPMENT CORPORATION; VICKIE BELL; JONATHAN BELL; PHILLIP B. BELL, JR. | | DEFENDANTS |
| VICKIE BELL; JONATHAN BELL; PHILLIP B. BELL, JR. | | THIRD-PARTY PLAINTIFFS |
| v. | | |
| JUDITH SUE WEISS; PATRICIA WEISS a/k/a EDITH FLORENCE WEISS; ELLEN JANE WEISS; *et al.* | | THIRD-PARTY DEFENDANTS |

**ORDER**

Before the Court is the Motion to Dismiss Third Party Complaint of the Weiss Defendants filed by Third-Party Defendants Judith Sue Weiss, Patricia Weiss a/k/a/ Edith Florence Weiss, and Ellen Jane Weiss (collectively, the "Weisses"). (ECF No. 42). Third-Party Plaintiffs Vickie Bell; Jonathan Bell; and Phillip B. Bell, Jr. (collectively, the "Bells") filed a response. (ECF No. 46). The Weisses filed a reply. (ECF No. 55). The Court finds the matter ripe for consideration.

**I. BACKGROUND**

On June 5, 2017, Plaintiffs First State Insurance Company and New England Reinsurance Corporation filed this declaratory judgment action, seeking declarations that they have exhausted the applicable aggregate limits of certain insurance policies issued to Defendant Pulmosan Safety Equipment Corporation ("Pulmosan") and that they have no further defense or indemnity

obligations under those insurance policies for certain products-liability lawsuits filed against Pulmosan, including a silica-related suit previously filed by the Bells in this Court.[1] The Bells answered the complaint and filed various counterclaims, crossclaims, and third-party claims. In their responsive pleading, the Bells, among other things, deny that the limits of the policies issued by Plaintiffs to Pulmosan have been exhausted and assert that Plaintiffs are liable to pay the $1,327,569.00 default judgment entered in the *Bell* case in favor of the Bells and against Pulmosan. The Bells argue further that if the limits have been exhausted, they were done so improperly and various parties—including the Weisses—are responsible for payment of the default judgment entered in the *Bell* case. Therefore, the Bells seek declarations that Plaintiffs' insurance policies are not exhausted; that various third-party defendant insurance companies improperly exhausted the limit of Plaintiffs' policies and thus should defend and indemnify said policies; and that Pulmosan's transfer of assets to former corporate officer Howard Weiss in 1986 was improper and thus, the Weisses, as heirs of his estate, are responsible for payment of the judgment against Pulmosan.

On October 13, 2017, the Weisses filed the instant motion, arguing that the Bells' third-party claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Weisses also argue that the Bells' third-party claims against Patricia Weiss should be dismissed pursuant to Rule 12(b)(5) for insufficient service of process.[2]

---

[1] *Bell v. Mine Safety Appliances Co.*, No. 1:13-cv-1075-SOH. It is of particular relevance to the present case that on August 29, 2016, the Court entered default judgment in the *Bell* case in favor of the Bells and against Pulmosan in the amount of $1,327,569.00. The Court denied Pulmosan's subsequent motion to vacate the default judgment and Pulmosan appealed to the Eighth Circuit, where the *Bell* case remains as of the date of entry of this Order.

[2] The Bells' response brief agrees to dismiss Patricia Weiss as a third-party defendant. Accordingly, the Court will dismiss the Bells' third-party claims against Patricia Weiss. Accordingly, the remainder of this Order will not address the Weisses' Rule 12(b)(5) argument and will only consider the Weisses' Rule 12(b)(2) argument as it applies to Judith Sue Weiss and Ellen Jane Weiss.

## II. DISCUSSION

The Weisses ask the Court to dismiss the Bells' third-party claims against them for lack of personal jurisdiction.

A party may move to dismiss claims for lack of jurisdiction over the person. Fed. R. Civ. P. 12(b)(2). To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing of jurisdiction. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994). This *prima facie* showing must be tested, not by the complaint alone, but "by the affidavits and exhibits presented with the [motion to dismiss] and in opposition thereto." *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974). If a court does not hold a hearing on personal jurisdiction and instead bases its determination on the parties' written submissions, the court must view the facts in the light most favorable to the nonmoving party. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). Although a plaintiff ultimately bears the burden of proof on the issue, the plaintiff does not have to prove personal jurisdiction by a preponderance of the evidence until trial or an evidentiary hearing. *See id.* However, when conclusory allegations in a complaint are contested and a plaintiff supplies no factual foundation, the complaint's conclusory allegations are insufficient to confer personal jurisdiction over a nonresident defendant. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004).

A federal court sitting in diversity may assume jurisdiction over a nonresident defendant to the extent permitted by the forum state's long-arm statute. Arkansas's long-arm statute provides that "[t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution." Ark. Code Ann. § 16-4-101(B).

Accordingly, the question before the Court is whether exercising personal jurisdiction over

the Weisses is consistent with the due process clause of the Fourteenth Amendment. The Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant who has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's conduct and connection with the forum state must be such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There are two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction. *Dever*, 380 F.3d at 1073. Under the general-jurisdiction theory, the Court may hear this lawsuit against the Weisses if they have "continuous and systematic" contacts with Arkansas as to render them essentially at home in Arkansas, even if the injuries at issue in this lawsuit did not arise out of the Weisses' activities directed at Arkansas. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In contrast, specific jurisdiction is viable if the Weisses have purposely directed their activities at residents of the forum state, and when the litigation results from alleged injuries that arise out of or relate to those activities. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Both theories of personal jurisdiction require some act by which the Weisses purposely availed themselves of the privilege of conducting activities within Arkansas, thus invoking the benefits and protections of its laws. *See Dever*, 380 F.3d at 1073 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If the Court determines that the Weisses have minimum contacts with Arkansas, it may then consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *See id.* (quoting *Burger King Corp.*, 471 U.S. at 476).

4

The Eighth Circuit has instructed courts to consider the following factors when resolving a personal-jurisdiction inquiry, with significant weight given to the first three factors: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id.* at 1073-74. The third factor is considered only in a specific-jurisdiction analysis. *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008). Moreover, the fourth and fifth factors relate to the Court's consideration of "traditional notions of fair play and substantial justice" in the due process analysis. *See Lakin v. Prudential Servs., Inc.*, 348 F.3d 704, 712 (8th Cir. 2003).

In the instant motion, the Weisses argue that the Court has no personal jurisdiction—general or specific—over them and thus ask the Court to dismiss the Bells' third-party claims against them for lack of personal jurisdiction. The Bells respond that the Court has personal jurisdiction over the Weisses because: (1) the Weisses are properly joined counterclaim defendants, and (2) the Weisses are the successors-in-interest to Pulmosan and thus the Court's personal jurisdiction over Pulmosan is conferred upon the Weisses pursuant to Federal Rule of Civil Procedure 25(c).[3] The Court will first determine whether it has general personal jurisdiction over the Weisses, and if not, the Court will determine whether it has specific personal jurisdiction over the Weisses. If necessary, the Court will then address the Bells' counterclaim-defendants and successors-in-interest arguments.

**A. General Jurisdiction**

Under the general-jurisdiction theory, the Court has personal jurisdiction if the Weisses have "continuous and systematic" contacts with Arkansas as to render them essentially "at home"

---

[3] The Bells' response does not discuss whether the Court has traditional general or specific personal jurisdiction over the Weisses themselves, and instead focuses solely on these alternative arguments.

5

in Arkansas, even if the injuries at issue in this lawsuit did not arise out of the Weisses' activities directed at Arkansas. *Goodyear*, 564 U.S. at 919.

The Weisses argue that the Bells failed to allege any facts to support a conclusion that the Weisses have any continuous or systematic connection with the state of Arkansas. The Weisses point out that the Bells' third-party complaint states that the Weisses are residents of New York. In further support, the Weisses offer the affidavits of Ellen Jane Weiss and Judith Sue Weiss, each stating that they are both residents of New York and that they have never resided in, done business in, or been to Arkansas.

The Court agrees with the Weisses that the Court has no power to exercise general personal jurisdiction over them. Evidence offered by the Weisses demonstrates that they are residents of New York and that they have never lived in, done business in, or even been to Arkansas. After the Weisses challenged the exercise of general personal jurisdiction, the Bells have failed to establish a *prima facie* case and rebut the Weisses's assertions with testimony, affidavits, or other documents. The Bells offer no evidence to demonstrate that the Weisses have any presence in or contacts with Arkansas.

Accordingly, the Court finds that, even when viewing the facts in the light most favorable to the Bells, the Bells have failed to make a *prima facie* showing that the Weisses have "continuous and systematic" contacts with Arkansas to make them essentially "at home" in the state. *Id.* Therefore, the Court cannot exercise general personal jurisdiction over the Weisses.

**B. Specific Jurisdiction**

Specific jurisdiction is available if the Weisses have purposely directed their activities at residents of the forum state, and when the litigation results from alleged injuries that arise out of or relate to those activities. *Nat'l Med. Waste, Inc.*, 65 F.3d at 1432. As discussed above, courts are to consider five factors in determining whether specific jurisdiction exists: (1) the nature and

quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dever*, 380 F.3d at 1073-74.

The Weisses argue that there is no specific jurisdiction because they have zero contacts with Arkansas and have never been to Arkansas. The Weisses also argue that none of the conduct related to the alleged transfer of Pulmosan's assets to Howard Weiss[4] occurred in Arkansas, precluding a "conduct-related" basis for exercising personal jurisdiction over the Weisses. The Bells do not directly address the Weisses' specific-jurisdiction arguments.[5]

The Court need not belabor a factor-by-factor analysis because "[s]pecific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006). As discussed in the previous section, the Bells' third-party complaint and the Weisses' affidavits appear to agree that the Weisses have no contacts with or presence in Arkansas, and the Bells have offered no evidence demonstrating otherwise. The Weisses are residents of New York. The Bells have only demonstrated that they themselves are Arkansas residents.

Accordingly, because the Bells have not shown that the Weisses have any contacts with Arkansas, it logically follows that the Bells have not shown that injuries have arisen out of or related to activities that the Weisses purposefully directed at Arkansas residents. *See id.* Therefore, the Court cannot exercise specific personal jurisdiction over the Weisses.

---

[4] See *infra* Part II.C.2 for further discussion of this transfer.

[5] It appears that the Bells arguably concede that the Weisses have zero contacts with Arkansas, stating in their response brief that a "court gains jurisdiction over the person as a consequence of his or her status as a successor in interest, without regard to whether he or she had any other minimum contacts with the state," and that "the lack of contracts with Arkansas claimed by the Weiss Defendants does not negate this Court's personal jurisdiction." (ECF No. 46).

### C. Alternative Theories of Personal Jurisdiction

The Bells argue that the Court may exercise personal jurisdiction over the Weisses because the Weisses are properly joined counterclaim defendants and are successors-in-interest to Pulmosan, making them liable for the judgment against Pulmosan in the underlying *Bell* case. The Court will separately address these arguments.

#### 1. Counterclaim Defendants

The Bells argue that the Court may exercise personal jurisdiction over the Weisses because the Weisses are properly joined counterclaim defendants pursuant to Federal Rule of Civil Procedure 20(a)(2)(A), and because the Weisses "are involved in the same transaction or occurrence which is the subject of this suit." (ECF No. 46).

Rule 20 governs permissive joinder of parties and provides in relevant part that a party may join an additional party as a defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of fact or law common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The Bells state that they joined Judith Sue Weiss and Ellen Jane Weiss as counterclaim defendants in this case because, as beneficiaries of Howard Weiss's estate, they are responsible for the obligation of the judgment debtor in the previous, underlying *Bell* case. The Bells argue that Rule 20 permits "all reasonably related claims" to be tried together, and because the Weisses are involved in the same transaction or occurrence that is the subject of this suit, the Court thus holds personal jurisdiction over the Weisses.

The Weisses argue as a preliminary matter that the Bells did not file a "counterclaim" against them, but rather brought a third-party claim against them, and therefore, the Bells' argument that the Weisses were necessarily joined as counterclaim defendants is without merit.

The Weisses also argue that, even assuming *arguendo* that the Bells asserted a compulsory counterclaim against them, this fact alone does not give the Court an independent basis for exercising personal jurisdiction over the Weisses. Rather, the Weisses argue further that a party cannot be joined under Rule 20 unless personal jurisdiction independently exists over the joined party.

The Court agrees with the Weisses. The Bells cite no controlling authority, and the Court is unaware of any, holding that joinder of a party as a defendant in a lawsuit gives the Court an automatic basis for exercising personal jurisdiction over the newly joined party. Indeed, personal jurisdiction must independently exist for all joined parties. *See Block Indus.*, 495 F.2d at 258 ("While permissive joinder . . . is . . . liberally construed in federal practice, personal jurisdiction must in each case be tested[.]"). Accordingly, the Court finds that it cannot exercise personal jurisdiction over the Weisses based solely on the fact that they were joined as third-party defendants to this suit under Rule 20.

### 2. Successors-in-Interest

The Bells argue that the Court may exercise personal jurisdiction over the Weisses because they are Pulmosan's successors-in-interest. Specifically, the Bells state that Pulmosan unsuccessfully attempted to dissolve in 1986 and at that time, it transferred its remaining assets to Howard Weiss, its former president and CEO.[6] The Bells assert that this transfer of assets was improper under New York law because Pulmosan had not properly dissolved at the time of the transfer. The Bells state further that Howard Weiss subsequently passed away and the Weisses, as heirs to his estate, now hold Pulmosan's improperly transferred assets. As such, the Bells assert that the Weisses are now successors-in-interest to Pulmosan.

---

[6] The Weisses' reply brief indicates that the transferred assets comprised the net proceeds from the sale of Pulmosan's equipment and a building.

The Bells argue that Federal Rule of Civil Procedure 25(c) provides for substitution of an original party's successor-in-interest to a lawsuit and allows a court with personal jurisdiction over the original party to exercise personal jurisdiction over its successor-in-interest, even in the absence of any contacts with the forum state. To this end, the Bells argue that the Court's personal jurisdiction over Pulmosan[7] is imputed to its successors-in-interest, the Weisses.

Rule 25 governs substitution of parties and provides in relevant part that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)."[8] Fed. R. Civ. P. 25(c). "In other words, the rule serves as a procedural mechanism to bring a successor in interest into court when it has come to own the property in issue." *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 40 (1st Cir. 2016) (internal quotation marks omitted). "The rule is designed to allow an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring the initiation of an entirely new lawsuit." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995) (internal quotation marks omitted). "In the Rule 25(c) context, personal jurisdiction over a potential party is imputed by its status as a successor in interest, without regard to minimum contacts. . . . Successorship status is required to impute personal jurisdiction." *Reibman v. Renesas Elecs. Am., Inc.*, No. 11-cv-3847-JCS, 2014 WL 251955, at *6 (N.D. Cal. Jan. 7, 2014).

The Weisses argue that the facts of this case do not permit Rule 25(c) substitution and that

---

[7] The Court notes that neither the Bells nor the Weisses conducted a personal-jurisdiction analysis with respect to Pulmosan in their briefing of the instant motion.

[8] "Although this rule permits substitution 'if an interest is transferred,' the rule provides no guidance or definition of what is meant by 'transfer of interest.' In the absence of a clear definition, courts have applied the rule broadly to include transfers by either a plaintiff or defendant of various kinds of property interest that may be involved in a lawsuit." *Adels v. Bierbach ex rel. Elders*, No. 1:09-cv-2363, 2011 WL 1457132, at *4 (M.D. Pa. Apr. 15, 2011) (internal citations and quotation marks omitted).

there is no basis on which to conclude that they are subject to personal jurisdiction based on a successor-in-interest theory. Specifically, the Weisses argue that the plain language of Rule 25 appears to indicate that some event must occur *after* a suit has been commenced to allow the successor-in-interest to be substituted for the original party under Rule 25(c). The Weisses argue that this case was filed over thirty years after Pulmosan transferred assets to Howard Weiss, and as such, Rule 25(c) does not apply because Pulmosan's transfer of assets occurred *before* the commencement of this suit. The Weisses assert that this precludes application of Rule 25(c) substitution as argued by the Bells. The Weisses argue further that the Bells have cited no authority providing that, in circumstances similar to those of this case, an individual may be held liable for the judgment debts of a corporation under a successor-in-interest theory.

The Court agrees with the Weisses that Rule 25(c) does not apply to the situation at issue in the way the Bells argue for. Rule 25(c) only applies to transfers of an interest occurring during the pendency of litigation and not to those occurring before the commencement of litigation. *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1407 (11th Cir. 1998); 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1958 (3d ed.). Pulmosan's transfer of assets to Howard Weiss occurred in 1986. The underlying *Bell* case was filed in 2013 and this case was filed in 2017. Thus, the transfer at issue occurred well before the filing of either case involving the Bells. As such, the Court finds that Rule 25(c) does not apply in this case.[9]

However, this finding is not necessarily dispositive of the issue of personal jurisdiction via successorship. "Personal jurisdiction is not created by Rule 25, which is merely a procedural rule

---

[9] Even assuming *arguendo* that Rule 25(c) might apply, the Court could not utilize it in this instance. "Rule 25(c) requires a motion for substitution to be made and served with certain formalities." *Froning's, Inc. v. Johnston Feed Serv., Inc.*, 568 F.2d 108, 110 (8th Cir. 1978). The Bells concede in their response brief that they have not filed a Rule 25(c) substitution motion in this case, stating that they instead joined the Weisses "by counterclaim rather than by motion." (ECF No. 46). The Bells do not cite to authority authorizing the application of Rule 25(c) where no appropriate substitution motion has been made, and the Court is unaware of any such authority.

11

governing joinder, but exists because successors in interest, with or without joinder, are subject to the court's jurisdiction and bound by the judgment." 6-25 *Moore's Federal Practice*, § 25.33 (3d ed.). Thus, the question before the Court is whether Howard Weiss was indeed a successor-in-interest to Pulmosan, and if so, whether the Weisses inherited that status as heirs to Howard Weiss's estate.

The Bells argue that the Weisses are successors-in-interest to Pulmosan because they are currently in possession of certain assets that Pulmosan transferred to Howard Weiss in 1986. Although the bulk of the Bells' arguments on this point are based on the application of Rule 25(c), the Bells also argue that the transfer of assets makes the Weisses "indispensable parties." Without citing to supporting authority, the Bells argue further that the Weisses' status as successors-in-interest is illustrated by the fact that Pulmosan and the Weisses appeared in this case together and jointly filed a motion.

The Weisses argue that the Bells alleged no facts and cited to no authority that would recognize the Weisses as successors-in-interest to Pulmosan based on their possession of the transferred assets. The Weisses argue that the transfer of assets was not "improper" because, at the time Pulmosan ceased doing business in 1986, it had at least $48,000,000 of insurance coverage from which judgements against it could be paid. The Weisses also argue that although they did jointly appear in this case with Pulmosan, represented by the same attorney, said attorney subsequently moved for permission to withdraw as counsel of record for Pulmosan on the basis that the Weisses' out-of-state lead attorney erroneously instructed him to appear on behalf of both Pulmosan and the Weisses, rather than just the Weisses.[10]

---

[10] The Court granted the motion to withdraw on December 1, 2017, and counsel withdrew as Pulmosan's counsel of record at that time. As of the date of entry of this Order, no replacement counsel has entered an appearance on Pulmosan's behalf.

"Black's Law Dictionary defines a successor as a 'corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.'" *Matthews v. Newport Healthcare Ctr., Inc.*, No. 2:05-cv-0271-JLH, 2006 WL 1026676, at *2 (E.D. Ark. Apr. 14, 2006) (quoting *Black's Law Dictionary* 1473 (8th ed. 2004)). "A successor in interest is one who 'follows another in ownership or control of property' or who 'retains the same rights as the original owner, with no change in substance.'" *Id.* The Seventh Circuit has summarized successor liability as follows:

> The well settled rule of American jurisdictions . . . is that a corporation which purchases the assets of another corporation does not, by reason of succeeding to the ownership of property, assume the obligations of the transferor corporation. . . . Exceptions to this rule exist where (a) the purchasing corporation expressly or impliedly agrees to assume the liabilities of the seller, (b) the transaction amounts to a consolidation or merger of the two companies, (c) the purchasing corporation is merely a continuation of the selling corporation, or (d) the transaction is entered into fraudulently to escape liability.

*Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 24 (7th Cir. 1977) (internal citations omitted).

"Asserting that a party is a successor in interest is a legal, not factual, allegation, and thus one that the Court may freely disregard." *Matthews*, No. 2:05-cv-0271-JLH, 2006 WL 1026676, at *2. Thus, the Court will disregard the Bells' conclusory statement that the Weisses are successors-in-interest to Pulmosan and will examine the Bells' other allegations and arguments on this point. The Bells do not allege or argue that Howard Weiss or the Weisses expressly or impliedly agreed to assume Pulmosan's liabilities, that the transfer amounted to a consolidation or merger of two companies, or that Howard Weiss or the Weisses continued Pulmosan's business after the transfer. This leaves the fourth exception—whether the transfer was fraudulently entered into to escape liability. Although the Bells do not explicitly allege or argue as such, their third-party complaint and response brief to the instant motion repeatedly characterize the transfer of

13

assets as "improper." However, when the Court reads this characterization in the full context of the third-party complaint, it appears that the Bells assert that the transfer was improper because Pulmosan had not successfully dissolved at that time, not that the transfer was improper because it was performed for some nefarious reason such as fraudulently attempting to escape liability. Thus, the Court finds that the Bells have not shown that the "fraudulent transfer" exception applies to make Howard Weiss or the Weisses successors-in-interest to Pulmosan.

In sum, the Court finds that the Bells have not demonstrated that the Court may exercise personal jurisdiction over the Weisses on the basis that Howard Weiss—and, by extension, the Weisses as his heirs—are successors-in-interest to Pulmosan. Accordingly, the Court declines to exercise personal jurisdiction over the Weisses based on a successor theory.

**D. Conclusion**

Upon consideration and for the reasons discussed above, the Court finds that it cannot exercise personal jurisdiction over the Weisses. Accordingly, the Court finds that the instant motion to dismiss pursuant to Rule 12(b)(2) should be granted.

### III. CONCLUSION

For the reasons discussed above, the Court finds that the Weisses' motion to dismiss (ECF No. 42) should be and hereby is **GRANTED**. The Bells' third-party claims against Patricia Weiss a/k/a/ Edith Florence Weiss, Judith Sue Weiss, and Ellen Jane Weiss are hereby **DISMISSED**.

**IT IS SO ORDERED**, this 19th day of December, 2017.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge

14